The next case on today's docket is People's State of Illinois v. Glenn W. Reed, Jr. We have Mr. Alan Andrews and Ms. Jennifer Camden. Please support and counsel. Again, I'm Alan Andrews. I'm here to represent Glenn and Glenn Reed. I'm going to try and cram a brief discussion of two separate issues in this. The first one is that Glenn Reed is entitled to have his cause remanded for further proceedings because his attorney definitely did not comply with Rule 651C. Now, Glenn Reed is a gentleman who raised the claim that his trial attorney told the jury in an opening statement that he would prove that Contekinte Goree had killed the decedent in this case. And at the time, trial counsel had been informed by the state that that was an impossibility because Mr. Goree was in fact in the county jail during the time of the murder. Nonetheless, trial counsel made that statement and the state proved that Mr. Goree was in jail and then belittled the defense case by saying, you know, look how desperate they are. They're trying to blame it on a guy who couldn't have possibly committed the crime. Now, the reason that Rule 651C was violated in this case was because this claim could have been raised on direct appeal. Everything supporting it was in the record for the appellate court. The opening statement, the state's warning to counsel the testimony, it's all there. Now, in the pro se claim, they didn't argue ineffective assistance of appellate counsel, so it's subject to waiver. It should have been raised. It wasn't. It's waived. Now, the state's argument in their brief is that it doesn't matter because the trial court didn't rule on waiver. It's very difficult to understand what the trial court's rulings were in this case. I think they did rule that it was waived, but it doesn't matter for two reasons. First of all, all that really is is a harmless error argument, and the case law is very clear that a violation of 651C is a per se reversible error. And they're just arguing it was harmless because there was no waiver rule. So for that reason, that argument has to fail. If he didn't amend the petition, it's per se reversible error. The second reason why it's reversible error is even if the trial court did not hold that the claim was waived, this court could. This court doesn't have to affirm the ruling on the grounds of the trial court. This court is perfectly entitled to hold that that claim is waived because it should have been raised on direct appeal. The PC counsel was obligated to amend the petition to prevent this court from being able to hold that it was waived. Glen Reed, at the very least, isn't entitled to have this clause remanded. I'm not conceding that Glen Reed isn't also entitled, but he has separate issues and we have a limited amount of time. The second point I would like to discuss applies to both Leming and Glen Reed in Issue 2, the offer of proof. Now, the state argues here that there can be no effective assistance of counsel because the information would not have been admissible. This is the information that a confidential informant talked to somebody who was at the murder, who said that two Caucasian men killed the decedent in this case. They stole his car, they wrecked his car, and they fled on foot. I guess it's worth pointing out that both the Reeds are African American, so this evidence is obviously highly exculpatory. Can I stop you there? Did you just say that an unidentified source talked to another person? Talked to a police officer. Okay, so that's the Scott Sandridge? Sandridge, yes. Okay, I thought we had like a third person here. There were like 19, but I apologize. That's okay. Okay, so the state's main argument is that the information that the confidential informant provided would not be admissible, and they rely on People v. Duquette and People v. Bruce. And I thought it would be worth our limited time to contrast the information that was found to be inadequate in those cases with the information provided here. If you look at People v. Bruce, that was a case where a couple was murdered, and the defense wanted to argue that they'd been murdered because they used drugs. So the defense said, we can show that they were involved in drugs. And the defense also said, we can show that there were rumors that some people did not like them. From their supposed use of drugs and these rumors, which is a quote, that people didn't like them, the defense wanted to cobble together this argument that they had been killed in some sort of drug transaction or whatever, and the court held that that's speculative and remote, and that seems perfectly proper. And if you look at People v. Duquette, it's the same type of thing. In Duquette, the defense wanted to introduce evidence that a man had fired a blank gun at the deceased three months beforehand and had also told him he should have his lock knocked off, and that the man had asked the police if he was a suspect. And the Illinois Supreme Court held that at most that showed that this other man disliked the deceit. Again, that's very vague and speculative, you know, to argue that that shows that he killed him. But in this case, in contrast with Duquette and Bruce, what we have here is an informant who talked to the police officer. The informant said that I talked to somebody who was present at the killing. The informant said that person told me that the two killers were Caucasians. The informant knew that the decedent had had a car, that the car had been stolen, and it had been wrecked. He knew that the people had fled the scene on foot, he knew the types of weapons they had used, and he also knew the first name of one of the people. It was Wayne. Now, that's much more detailed than the type of information that was excluded in Bruce. Rumors that somebody didn't like the decedents, and in Duquette, where they actually showed somebody who didn't like it, but didn't provide any evidence that that dislike would rise to the level of committing a homicide. Now, because that evidence is so much more concrete, it should have been admitted. And because it should have been, because it was admissible, it became very important that counsel gave this inadequate author proof, which is how I'm finally getting around to what happens in issue number two. Counsel completely failed to corroborate that testimony, the evidence that would have been provided through the confidential informant or by the person the confidential informant talked to with this statement from Mr. Ray Booker. You know, Mr. Booker testified that the other evidence that was relevant was that somebody heard the car crash, the decedent's car, heard the wreck, and he went to the scene of the wreck, and that was between 4 and 4.15 a.m. at Harris Road and Seminary Road at that intersection. All right, Mr. Booker's testimony would have showed that, or the author of proof to the trial court which would have convinced the trial court to admit this evidence, he would have said, you know, I saw two Caucasians walking on foot down Polk Lane near a golf course, and they caught my attention, so I looked at them. When they saw me, then they turned around and started walking the other way, and then after that, not only were they walking the other way, they jumped a chain link fence onto a golf course and disappeared that way. And this would have strongly corroborated the informant's statement that he or she had been told that the two Caucasian men had fled on foot after wrecking the decedent's car, because here we have two Caucasian men. You know, and the state points out that there's nothing in the record about how far away these people were on Polk Lane, but I cited the cases in my reply brief that says that this court can, you know, look at a map, and if you go, I'm not from the area, I don't know Alton or Goshree too well, but if you go to MapQuest, there's a golf course on Polk Lane, and it looks like it's within, certainly within two miles at the most of this car wreck, and you can cover two miles in a half an hour on foot pretty easily if you want to, and it looked to me like it was less. So the error in this case was counsel in the author of proof, had he simply included this information from this disinterested bystander that said, yes, I saw these two Caucasians walking. They were acting suspiciously by turning around and then by fleeing across the golf course. That would have strongly corroborated the informant's information, and the informant's information alone was detailed enough to survive the admissibility test set forth in Duquette. And I guess the most important aspect of all that testimony is they were Caucasians, so they couldn't be the defendants. Couldn't be the Reeds. You know, even if we couldn't show who they were, we could show it wasn't the Reeds. And, you know, the Reeds, as this, I won't belabor the evidence in this case, but as this court pointed out in the direct appeal, the evidence against the Reeds, you know, this is a classic case that depends entirely on a co-defendant who got one of the best deals of all time, as far as I can tell, apparently never served any time in prison for participating in admittedly shooting the decedent in this case. So this is a weak case showing that there's a strong probability that two Caucasian males were the murderers could well have made a difference. And for that reason, the Reeds were denied the effective assistance of counsel in the trial court's ruling that the petition should have been, that the claim had no merit in the post-conviction petition was wrong. Was the confidential informant identified? No, no. But, you know, obviously the detective knew who it was. So, I mean, what was envisioned, that the police officer would testify or the confidential informant? It was envisioned at least, you can tell from the quote, that the confidential informant would testify because there's a line in here that said, this particular subject had a conversation with a person who was present at the homicide. There would be testimony from a confidential source, as so take by Scott Standage. So counsel at least contemplated calling the confidential source. And you never really got into, because they held it, it wasn't detailed enough to even come in, you never got into whether or not they could have called the person who the source talked to. That's really not been resolved. That's kind of hanging out there, whether that person could have testified also. Thank you, Mr. Anderson. Thank you. Ms. Camden. May police support? Counsel? First, with regard to the claim about the Rule 651C certificates, appellate counsel need not advance frivolous or spurious claims, and the bereaved claim was considered and denied on the merits by the circuit court after the third stage evidentiary hearing at which no evidence on that claim was presented. As to the Booker claim, both parties here agree that the trial court's denial of this claim after the evidentiary hearing is reviewable by this court under the manifestly erroneous standard. So the question is whether the trial court's denial of this claim is erroneous based on a plain, indisputable, clearly evident error, and this court cannot conclude on this record that manifest error occurred. Now, a trial court should exclude evidence of other suspects where it's speculative or fails to link a third person closely with the commission of the crime, and a defendant does not argue that the Booker statement, standing alone on four corners of the statement, was sufficient under that standard. Indeed, it was speculative, and it did fail to link the men that Booker saw with the crime. Instead, the defendants argued that the value of that statement is that it would have corroborated the Sandage statement, which was itself ruled inadmissible by the circuit court, such that both statements would have been admitted if the Booker statement would have been offered. In other words, that one statement that on its face was inadmissible plus another statement ruled inadmissible would have resulted in the admission of both statements, or in other words, 0 plus 0 equals 2, according to the defense. But the question is not whether a statement can be corroborated by other inadmissible evidence. The standard is whether it's speculative or whether it fails to link another to the crime. The defendant's approach here finds no support in the case law. Why couldn't the confidential informant testify? If he was available, this confidential informant, if he was available and he said he saw two other people there around, wouldn't that be admissible? The trial court held that it excluded that evidence as speculative, excluded the evidence in the offer of proof. This statement was one of several statements that the police collected in the two-year investigation, implicating I think I counted 19 people that it named as involved or as having been the culprits. So he kicked it out not based on the fact the policeman was going to testify to it and was hearsay, but he kicked it out as if the confidential informant was there and would have testified to it in person and he found that that was speculative? I can't answer that question. I'm just trying to think who he thinks was going to testify, the policeman, to what he was told and couldn't be cross-examined about, or are you talking about the actual person who said he saw it? I do not know. What I know about the Sandage statement is that Sandage told the court that an unnamed person told the confidential source who told him that. Say that again, would you? An unnamed person? Right, told the confidential source who then told Sandage. I mean, the confidential source wasn't the murderer in the Sandage statement. It was somebody who told the confidential source. I was right, but that wasn't necessarily the one who did it, though, was it, the unnamed source? Is he the one that supposedly was one of the participants? I do believe so. Okay. But at any rate, even if the inadmissibility of this Booker statement, the statement that was unquestionably inadmissible because it didn't link these men to the crime, even if its admissibility could be bolstered by this inadmissible Sandage statement,  I have even almost more trouble with the Booker statement than the other because, I mean, it seems to me people have been convicted on a lot less circumstantially. It's in the middle, very early morning in a very rural area. There's two men like fleeing something on foot into a golf course in the proximity of a crime, and then I think shortly before this man, who's supposedly very objective, sees these men fleeing, he hears the car accident or the crash. He said 15 minutes or something like that. If I may, Your Honor. Sure, and maybe I don't have it exactly right chronologically. Not quite, Your Honor, but it is confusing. There was a separate witness who testified that he heard the crash between, as the defense counsel said, between 4 and 4.15 a.m. The squirrel hunter, Booker, testified that he was on his way to, that he was turning into his friend's driveway to pick him up to go squirrel hunting. This was at about 4.45 a.m., a distance of at least two miles away. So we're talking about a half an hour, 4.15 to 4.45? I mean, doesn't that kind of fit perhaps? I guess if you're running, you could go a couple miles in a half an hour. Well, another point is that the Booker statement did not say that the men were fleeing, that they were running. Well, it said they ran, they were, he passed them on the road, turned around and looked because it was odd to see two men kind of going down the road. I guess it's not even barely light then. And he turns and looks. They turn and veer and jump over a fence into a golf course. I think Booker's statement said that they were walking, but really what we're getting bogged down in, and Your Honor mentioned a minute ago that the area was very rural, and I want to point out that there's no evidence in the record. There's no what? Evidence in the record that the area was. . . I actually happen to know that they're just very rural. Then you're at an advantage. If anybody lives in that area, they kind of know that it's a rural area. Well, my response, and this is the main point that I came here to make, honestly, is that the defendant here is asking us to speculate, is asking this Court to speculate on facts not in the record. The defendant had an opportunity to present an argument in the record about the amount of foot traffic on this road in 1994. Gosh, I graduated high school. Long time ago. And did not do so, and the Circuit Court didn't make any findings of fact on the likelihood that the two men described in this hearsay-sandage statement were the same two men as described in the Booker statement, and that's really the crux of the defendant's argument here, and is based on this idea that they must have been the same two men because what other two men would have been out there that early in the morning, except, of course, for Squirrel Hunter Booker and his friend? This Court can't speculate that the Circuit Court committed manifest error. It must be grounded on something more than the reading of the map, which in any event wouldn't indicate what was happening there in 1994. In other words, there's no proof in the record that the Booker statement made the sandage statement any less speculative. The Circuit Court must not have thought that it did, or else it wouldn't have denied this claim on the merits as conclusory and speculative without adequate proof. And on this record, this Court cannot conclude that that constituted manifest error. And if that seems unsatisfying, it's because the record is unsatisfying, and it's because the defendant is asking this Court to calculate the odds of early-morning, fair-complexioned exercisers on a road in Madison County, Illinois. If there are no further questions. Thank you, Ms. Camden. Do you have anything further, Mr. Anderson? I'm afraid I do not. Well, it's not going to be real long. No. As for the 651C issue, I think it's interesting that the State argues 651C has been complied with, but yet spent the last five minutes trashing PC Council's performance with the Booker thing by not showing it. Well, I think she was kind of under duress there. She argued for the 651C that you don't have to, Council doesn't have to amend or whatever a frivolous claim, but I think it's important to remember, as Council stressed, that this is not a petition that was dismissed as frivolous. This is a petition where the claims were advanced to an evidentiary hearing, so the cases that say you don't have to amend a frivolous claim like Greer don't apply. This is not a frivolous claim. The only other thing I would like to try and answer is Your Honor's question about what would the confidential informant have testified to. Now, I don't think the informant was present at the crime. It sounds like the informant talked to somebody who was present at the crime, one of the participants. It was actually one of the participants? Somebody who was present at the crime. It could be a bystander. That's true. If it was one of the participants, however, and, again, you didn't get to this because it was dismissed early. I mean, you know, this could be sent back and it could turn out to be inadmissible. I'm not saying it couldn't, you know, but if it was one of the participants, the statement to the informant would be a confession, which should be admissible. The informant should be able to testify that so-and-so, you know, said I was one of the two participants and we shot them and all of that. So certainly there is a way that the informant's testimony alone could have been admissible. And there's certainly, on the record, no reason to think that you couldn't at least try to call whoever it was the informant had talked to to provide the testimony about who did it. Well, it would have ñ nobody identified the person that the informant talked to, so we don't know who that is. It never got to that point. So the person that's ñ we probably all agree what the police officer's got, the informant, is hearsay. So you say the exception to the hearsay rule would be against his penal interest. It could well be. The unidentified person. If that person was a participant, it would be against the penal interest. And again, there's no reason to assume that, you know, it's obvious that the informant knows who it was that they talked to, and I don't believe there's any reason to assume at this point that that person could not have been called, especially, you know, you couldn't call them if they were a defendant, but then you'd have their confession in if they were a participant because they take the fifth. But if they were merely a bystander, then there's no reason to assume at this point that they wouldn't testify as to what they saw and that the reads were not the murderers in this case. Do you think the court determined that it was speculative that this person actually existed that the confidential informant talked about? But do you determine that that just didn't make any sense? I didn't gather that from the record that there was any question about, you know, I mean, it was the informant existed. I mean, they said it was a taken statement. The informant existed, but what he said was... I didn't get the idea that it was based on that person not existing. I thought it was simply based on Duquette and Bruce, that the information provided wasn't detailed enough to satisfy the court that, you know, that somebody else had perhaps committed the crime. Thank you very much. Thank you, Mr. Andrews. Ms. Hamden, we'll take the matter under advisement.